Case number 19-1044, Envi Public Employees for Environmental Responsibility and Hawaii Coalition Palomo Pono Petitioners. Ms. Geinerstein for the petitioners, Mr. Grant for the respondents. Ms. My name is Paula Dinnerstein, and I am representing the petitioners in this case, Public Employees for Environmental Responsibility, or PEER for short, and the Hawaii Island Coalition Malama Pona. So, 20 years ago, Congress passed a law, the National Parks Air Tour Management Act, that was intended to either mitigate or avoid the adverse impacts of air tours on national park cultural and natural values and visitor experience. The law was passed to benefit exactly the type of people we represent, people who use the parks for recreation, the bird watchers, the hikers, the photographers, and also people with businesses in the parks who we also represent, who have ground tour businesses, who have environmental education businesses, in one case a soundscape recorder, and these people have been seriously harmed by the 20 year delay in implementing this act. We have people who are seeking undisturbed experiences of nature and wildlife, and they're not getting them. We have people who are in some of these parks where there's a very high volume of air tours, or in other parks where there's kind of a moderate version, like the Hawaii Parks, Hawaii Volcanoes, Haleakala, have a very high volume, where year round you're getting a high volume. Other parks, like Glacier National Park, for instance, may have a more moderate total of air tours, but they're concentrated in two or three months of the year or the summer, and these people are having airplanes fly over them every 15 minutes at low altitudes and making a very significant amount of noise. We have people who in their declarations have said they hiked two or three days to get to a very remote area where they're expecting an experience of nature and natural sounds, and they're being buzzed by helicopters. We have people who have said that they're seeing helicopters fly right up to a cliff and spook the wildlife. We have people with businesses in the parks who are doing tours and environmental education who are saying that their customers are not getting the experience they're looking for of a quiet, natural environment because of these air tours. Until this case was brought, the agencies had done virtually nothing. There are two parks in the entire country out of the 25 that are now subject to the Act that have voluntary agreements. There are none that have air tour management plans. Now, the government's, the agency's response is that they have been working on this. They have competing priorities, limited resources. There's only so much that can be done. Now, typically, we give a lot of deference to the agency when they are identifying their priorities and when they tell us we just don't have the resources. What's your response to that? This is kind of a different case in that regard in that the agencies are telling you that they've spent lots of resources on this, that $25 million just on noise studies alone. They spent, between 2003 and 2011, eight years working on 16 air tour management plans, which they then abandoned. They then spent seven years working on only voluntary agreements, which they now admit was always doomed to failure because people are not going to enter voluntary agreements when they can simply continue without restrictions to use their interim operating authority. So I don't think this is a case where the problem is limited resources or competing priorities. This is a case where lots of resources have been put into this problem, but for some reason these agencies have been unwilling, unable to do the last step. Who do you think that reason is? You're very familiar with this case. What is your perception about what's going on? I can't say that we have evidence in the record for this, but my perception of what is going on is that you have two agencies, the National Park Service, whose mission is to protect park resources and visitor experience, and then you have the FAA, and their mission is supposed to be air safety. There's inherently no reason why they should be incompatible. You can restrict flights, you can reduce flights, you can mitigate their impacts without impacting air safety, but for some reason the FAA has been unwilling to say to the Park Service, go ahead, protect your resources, and we'll just look at safety. They're saying we have to look at everything, we want to do environmental review the way we want to do it, and as a result they've had a stalemate and they haven't come out with any plans. Now they're telling the court that even though the reason, the supposed reason, that they couldn't do this in the past was the differing missions of the agencies, which as I said I don't think is really true, but now they're telling the court that, but now we're on track, we're going to overcome these, we got together, we talked about it, we're going to work it out. And why shouldn't we credit that? The reason that we shouldn't credit that, first of all it doesn't, it's contradictory to say we couldn't do this for 20 years because of our differences. But that's done, that's done. But we're doing it now. But now they're saying we've got a plan and we're starting on it, why shouldn't we let them? So now we need to look at the plan that they have. Out of the 23 parks that need plans, their plan only covers 7. So, and there's no even target dates for the rest of them, which includes 6 out of the 7 in our petition and 16 out of 23 in the whole system. So they don't have a plan for that. It doesn't assure within any time that those other parks will be done. The plan that they have has already slipped. You know, there are two parks where they were supposed to have come up with a voluntary agreement for public comment at the end of October. And those are Death Valley and Mount Rainier. And as the agency submitted in a 20HA, they weren't able to meet that deadline because the operators didn't like what the agencies had proposed for their voluntary plans. And so now they're going to have to go back and try to make it more palatable to the operators. And they admit that that might not work at all, that they might have to go to an air tour management plan, which is not voluntary. And they do not even have a substitute target date for those parks. So we're now in a position where there's no schedule and because they're saying that these are all dependent on each other and that they're not going to move ahead with other parks until they finish or at least finish certain milestones in some parks, this is going to throw the whole schedule back. In addition, the seven parks they picked are all except for one. So what makes you think that if we granted the writ of mandamus that anything would be different? I think that something would be different because they would be under a court order to do something. The only reason they even come up with this plan was because we brought this case. No, now they know they have to do something. But they have tried, I think, to convince the court that you should stay your hand based on a plan that isn't really a plan. That doesn't apply to very many parks. That has already slipped. That applies to two parks that don't even have air tours. You know, they've picked the low-hanging fruit. And if it's going to take them two and a half years to do these seven parks, then it's going to take... Does Congress have any interest in this of late? Congress amended the act in 2012. Excuse me. And at that time they added the possibility of voluntary plans. But they didn't take away the air tour management provisions that said the agencies have to cooperate. There have been no hearings on this or threat of holding appropriations up? I am not aware of any such congressional action. And I know the government has argued that maybe the court shouldn't do anything because there's no congressional action. However, under the APA, this court has a duty to compel agency action unreasonably delayed. And there's not an expectation that the court won't do anything just because Congress hasn't come back and said, hey, you're not implementing our law. They're not... Congress has a lot of things to do. They may not get around to that for everything, every law they pass. But this court has the obligation to enforce the law in accordance with the APA. And this court has always done so. You know, ever since the track case in 1984, which in fact was compiling other past cases, this court has said that the extraordinary relief of mandamus does apply to unreasonable delay. And they've set out factors for figuring out when it does apply. And your court has not withheld relief simply because Congress hasn't come back and tried to do something about the fact that the law they passed is not being implemented. So continuing along the line of this court's precedent on mandamus, this court has never found this amount of delay to be reasonable. This is really at the outer edges of the mandamus cases that this court has considered. We, you know, cited several cases in our brief. We have, for instance, in Reed American Rivers where six years was found unreasonable. Blue Water Network, nine years is unreasonable. In Nader v. FCC, this court said that nine years should be enough time for an agency to do just about anything. In Reef Corps Communications, it's six years. Chemical workers, six years. And then where there is a threat to human health, as in the case of Public Citizen v. Actor. Which there isn't here, correct? Pardon me? There isn't here, right? There is, I'm sorry. Is not here such a threat, right? There is not. No, we're not. I mean, this is not. We're not claiming this is not comparable to a toxic chemical, but in that case, you know, they found that three years was too much. There's never been a case that has found this kind of delay to be acceptable. You know, we're not absolutely tied. The statute says that there was an expectation that they would make every effort to put out these plans within two years. You know, we're not absolutely tied for a remedy to the two years. That's what's in the statute. That certainly could be the remedy. What do you think a reasonable remedy would be? You know, I think that if we could work out, or the court could work out with the parties, a remedy that was maybe four years or five years, I mean, we wouldn't object to that. You wouldn't object to what? To the remedy being four years or five years instead of two. But what we really need is, you know, a court deadline, an enforceable court deadline. Because given the history, given even what they're doing now and the way it's already slipping, I don't think there's any guarantee that we wouldn't be here ten years from now in pretty much the same position if there weren't a court. Do we have an in re bar labs problem here? In other words, if we were to grant mandamus relief and say three years or something, would the agency just have to turn its attention to the plans you want as opposed to the ones they're working on? In other words, would it change, would it just, I think the language that was used in in re bar labs was jump the line, right? Right. Is that a risk here? No, we're not asking to jump the line. No, but isn't that the consequence? I'm asking whether that would be the consequence of what you're asking us. If this court issues a remedy, we brought our case about seven parks because that's where we had injured members. But if this court issues a remedy, I think it should apply to all 23 parks that don't have plans or agreements. We're not asking to be put ahead of the line. We're not asking for the order of things to be dictated by the court. So if you don't have any more questions at this point, I can save the rest of my time for rebuttal. All right. Mr. Grant. Good morning and may it please the court. Eric Grant for the Respondent Federal Agencies. I'm not here this morning to defend 19 years. That's good. Good move, good move. That's a good start. I am here to respectfully remind the court of two precepts, including one that Your Honor, Judge Tatel mentioned, the Barr Laboratories case about reordering agency priorities. Well, would that happen here? It would, Your Honor. Why? I'm sorry. Well, if our order applied to all parks, all 17, then there wouldn't be any reordering, right? Well, Your Honor, what I would like to do is make a pitch for our September 30th submission, our implementation plan. Which the agency's already violated, right? Your Honor, we have not met all of the target dates. We explained in our... That's another way to put it, correct. It is another way to put it, Your Honor. We explained in our Rule 20HA filing on Friday some of the challenges that we faced with the air tour operators there and the steps that we're taking to get back on what we think is a reasonable schedule. And so... So remind me, what's the reasonable schedule? What's the government's proposal here? Well, Your Honor, this is in our filing of... You've acknowledged 19 years is inadequate. So what... Going forward, what's the best way forward? We've done more than just give a single date that's several years out, Your Honor. In our September 30th filing, beginning on page 19, we have... Let's start with that. What's the date? What's the outer limit? When can this get done? There are many dates, Your Honor. We've described seven parks and... I'm talking about 23. The Congress has told you to do something in 23 parks. How much time would it take the agency to get it done? As I stand here, Your Honor, I don't have an answer for that. You see, that's the problem. That is the problem. I'm sorry. As you said, that's astounding that you don't have an answer for that. I would have thought that you had a great opening line. I'm not here to defend 19 years. I thought the next line would be at least prepare to say we can get it done by X. But you're not here. You can't do that. I'm a lawyer, Your Honor. So then we get there. So I guess we have to decide that. Help us. Your clients put us in a tough position because, as you say, you're not to defend 19 years. But most agencies that face this, they come back with something. Basically, what your agency has said is we're going to do our best to do these seven in two years or so. And then those will be models for the rest. And there's no... The agency has given the court nothing to grab onto here. You said we'll apply lessons learned in the seven parks to subsequent parks. I'm reading the language. While the agencies are not yet in a position to specify with certainty when the next parks will be done, they will consider the selection factors and apply lessons learned. The agency gives the court nothing. You don't give us anything to say, okay, we don't have to grant mandamus relief because we have an agency here that's actually not only trying to do it, but it's finally set a schedule that is meaningful. You just haven't given us that. With respect, Your Honor, I disagree that the agencies have given you nothing. Again, beginning on page 19 of that submission, there is a plan with multiple dates for multiple parks covering a third of the remaining 23 parks. And as Your Honor pointed out, it's the agency's position that the lessons learned from those will allow the agencies to complete the entire statutory mandate of all 23 parks. It's certainly not the agency's position that we need only do seven. We need to do them all because this is one of Congress's statutory mandates. But we are implementing other statutory mandates, as Your Honor, I'm sure well knows. Why did we get here? What's your explanation for how we got here 19 years later? That's all we've got. What happened? We described on pages 7 through 16 of our brief the efforts in which the agencies engaged over the past couple of decades. And while those did not bear fruit in more than two parks, we submit respectfully that those did give us a base to begin the process that we described in our September 30th submission. Okay, but what's the problem? What took so long? What is the problem? Where's the problem here? And therefore, how will it be avoided in the future? Well, I think as my colleague on the other side explained, these are two agencies with different missions. Congress knew that when it said two years. It said the FAA in cooperation with the Park Service. It knew that. Congress knew that. It may have known that, Your Honor, but Congress crafted what we think is certainly a distinctive, if not a unique statute that requires two agencies with different missions to agree on complex decisions, including environmental review under the National Environmental Policy Act. Has the agency ever thought about maybe going back to Congress? Did it ever think 10 years ago it should go back and say to Congress, look, we're doing our best. You told us two and a half years. We're not even close. Please give us more years and more money or get the Park Service out of it or something. I mean, did you, has that ever been done? Were you even considered? With respect, I would disagree with your premise about the two years. As my colleague on the other side conceded, I think, that particular statutory provision uses the phrase best efforts. But Congress did look at this. But best efforts to do two years, as you agree, does not mean 19 years, right? I do agree, Your Honor. How complex is it? I mean, two of the parks, Death Valley and Mount Rainier, have zero air tours, and yet the timeline that you all have anticipates that it'll take up to two years to complete air tour management plans. How's that? I'm missing something. There are no air tours there, and it's going to take you two years to come up with a plan. We nonetheless need to do the environmental reviews. We need to do tribal consultations. Wait, why do you have to do an environmental review if there's no air flights? What's to review? Your Honor, under the mandate of this statute, we are required to follow the National Environmental Policy Act. I see. And in looking forward and setting... That sounds like a pretty simple environmental impact statement. No flights, no impact. For a court that hears NEPA cases, Your Honor... I just wrote it for you. That one's done. I, again, would respectfully disagree with that characterization. I direct the court to page 21 of 29 of our September 30th submission that explains why the agency selected the particular parks. There are a mix of designated wilderness areas. There are a mix of parks with different kinds of vegetation, which affects noise. There are different geographic areas. There are parks that involve tribal consultation. There are parks with very high... Judge Griffith has mentioned the parks with low numbers. There are parks with very high numbers, including the Badlands and Mount Rushmore, which are the first two at the top of the list on our September 30th plan. So it's not a perfect world, but the FAA is in charge of the nation's air safety, which encompasses 44,000 flights a day, 2.7 million passengers a day, a billion passengers a year. And for its part, the National Park Service administers 400 areas throughout the nation comprising 85 million acres and handling 330 million visitors. So we're doing other things as well. We need to do this, and we will do it. I would completely understand if you can't answer the question I'm about to ask you, as counsel to the agency. But suppose we said, look, this has gone on too long. Based on our case law, and the record in this case, we think we need to grant mandamus and we need to come up with a date. Plaintiffs just told us, petitioners just told us they'd be happy with four or five years. What do you think about that? Respectfully, Your Honor, I think the better course would be for us to continue on this existing plan and report back to the court in some reasonable time, like six months, and for the court to be, to be satisfied at that time that we're on a path and that we will be continuing on that path and get the first third done before we get on to the second third. To, as my colleague said, to pick the low-hanging fruit and then go on to the higher-hanging fruit. To walk before we run. But I think, respectfully, just picking a date, whether it's near or far, is not going to be the solution to this very difficult problem. And while I can understand the court's skepticism with the agencies, again, we've not done nothing and even before this particular petition for review was filed, we've started work again and that's laid out in the declaration of associate, the National, the Associate Director of the National Park Service, Raymond Saviat, in our September 30th submission. We've started work, we're on our way, and so, with respect, we would ask the court to give us a chance to get those things under our belt and some reasonable time, which I respectfully suggest, six months, would be the way to accomplish that. I'm done. Unless the court has further questions. Thank you. Does Ms. Dinerstein have anything to add? Ms. Dinerstein has one minute remaining. All right. Okay, I'll try to be brief. So they said that all the work that we've done in the past gave them a base. We asked them to use that base and move quickly and that they can commit to a time, a definite time. They talk about agencies not being able to cooperate under NEPA. In fact, under NEPA, agencies cooperate all the time. The regulations include having a lead agency and a cooperating agency just as there is here and there are lots of cases where that cooperation has led to huge delays. Happens all the time. But that hasn't stopped the court from insisting that something get done eventually. That is not a reason to say that there should be no deadline and we don't think that coming back in six months and reporting progress is really going to be enough here under the circumstances. We think the court needs to give a time limit. I think we should say all deliberate speed. I'm sorry? All deliberate speed. We're still working on that one. We hope we can do better than that. Thank you. Thank you.
judges: Henderson, Tatel, Griffith